Aaron R. Cahn
Alan S. Lewis
Carter Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232

Attorneys for Flatiron 21 Associates LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————x

In Re : Chapter 11

PARK EASTSIDE PROPERTIES, INC.,
f/k/a Downtown Realty Operating Corp. : Case No. 10-10007 (REG)

Debtor.

: Notice of Appearance
: and Request for Notices

———————————————————x

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Flatiron 21 Associates LLC ("**Flatiron**") hereby moves pursuant to section 362(d) of the Bankruptcy Code for relief from the automatic stay, on the following grounds:

### JURISDICTION AND BACKGROUND

1. This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362 and 28 U.S.C. §§ 157 and 1334.

2. Downtown Realty Operating Corporation, n/k/a Park Eastside Properties, Inc. ("**Debtor**" or "**Downtown**"), filed its petition under Chapter 11 of the Bankruptcy Code on January 4, 2010 (the "**Petition Date**"). In 2005, long prior to the petition date,

1

Debtor had commenced an action in New York State Court (the "**State Court Action**") against Flatiron arising out of a failed real estate contract. Flatiron has counterclaimed for liquidated damages, based on Debtor's failure to remit an agreed upon payment in exchange for a requested adjournment of the contractual closing date and for abuse of process based on Debtor's having filed, in connection with the State Court Action, a notice of pendency which interfered with Flatiron's right to use and enjoy its property. Copies of the amended complaint and answer are annexed hereto as Exhibits A and B, respectively.

3. Debtor, together with non-debtor affiliate Flatiron 21st Street, LLC ("**21st Street**" and collectively with Debtor, the "**Plaintiffs**") entered into an agreement dated June 24, 2005 (the "**Agreement**") whereby Debtor agreed to purchase the property located at 30 West 21st Street, New York, New York (the "**Property**") from Flatiron for $25,000,000. The Agreement expressly provided that it was not conditioned on Debtor's obtaining financing from a third party. It further provided that the closing would be held 60 days from the date of the Agreement, that time was of the essence, and that the purchaser, i.e., Debtor, would be entitled to one 30-day extension. A copy of the Agreement is annexed hereto as Exhibit C.

4. On or about August 18, 2005, Plaintiffs and Flatiron executed a First Amendment to the Agreement. A copy of the First Amendment is annexed hereto as Exhibit D.

5. By letter dated August 18, 2005, Downtown extended the closing date, as defined in the Agreement, to September 21, 2005, time being of the essence with respect

2

to Plaintiffs' obligations, that date being ninety days after the date of the Agreement. A copy of that letter is annexed hereto as Exhibit E.

6. By letter dated September 19, 2005, Downtown and Flatiron agreed to extend the September 21, 2005 time of the essence closing date to October 7, 2005, time being of the essence with respect to Plaintiffs' obligations (the "**September 19, 2005 Letter**"). A copy of the September 19, 2005 Letter is annexed hereto as Exhibit F.

7. Pursuant to the September 19, 2005 Letter, in consideration for Flatiron's agreement to extend the September 21, 2005 time of the essence closing date, Downtown agreed to reimburse Defendant for its carrying costs in the amount of $6,181.00 per day as liquidated damages from September 21, 2005 through October 7, 2005, or an earlier closing date.

8. By email dated October 6, 2005 from Plaintiffs' counsel to Flatiron's counsel, Plaintiffs announced that they would not attend the October 7, 2005 closing and admitted that they would not be ready, willing and able to close at that time. A copy of this email is annexed hereto as Exhibit G.

9. By email from Flatiron's counsel to Plaintiffs' counsel dated October 7, 2005, Flatiron conveyed to Plaintiffs that Flatiron had not agreed to adjourn the October 7, 2005 closing and notified Plaintiffs that their failure to attend the closing was a default under the Agreement. A copy of this email is annexed hereto as Exhibit H.

10. On October 7, 2005, Plaintiffs failed to appear for the closing at the location where it had been scheduled to take place, thereby defaulting under the Agreement.

11.     By failing to appear on October 7, 2005, Plaintiffs were not ready, willing and able to close on the October 7, 2005 closing date, time being of the essence.

12.     In accordance with the Agreement, Flatiron notified Downtown of its default by letter dated October 14, 2005. A copy of that letter is annexed hereto as Exhibit I.

13.     In accordance with the Agreement and the September 19, 2005 Letter, Flatiron demanded payment of the amount of $98,896.00 as liquidated damages.

14.     Plaintiffs have failed to remit payment.

15.     On October 17, 2005, Debtor filed a complaint (the "**Complaint**") in New York County Supreme Court seeking specific performance of the Agreement, along with a notice of pendency, with the obvious intent of tying up the Property.

16.     After having failed to respond to several additional offers by Flatiron to close the transaction on the terms set forth in the Agreement, Plaintiffs, on November 13, 2006 – 13 months after they brought the Complaint seeking specific performance – suddenly sought leave to file an amended Complaint to add a claim for rescission of the Agreement to their claim for specific performance (which Plaintiffs continued to assert in the amended Complaint). On January 2, 2007, Downtown served and filed a revised proposed amended Complaint, which dropped the specific performance claim and contained only a rescission claim. The theory underlying Plaintiffs' rescission claim was that Flatiron allegedly had breached the Agreement by failing to tender insurable title to Downtown at the October 7, 2005 closing (which Plaintiffs failed to attend), purportedly extinguishing Downtown's obligation as Purchaser. On approximately the same date,

4

Downtown finally agreed to withdraw the notice of pendency. On June 6, 2007 the state court granted Plaintiffs' motion for leave to amend the Complaint.

17. On July 27, 2007, Flatiron filed its answer to Plaintiffs' amended Complaint and asserted counterclaims for (1) liquidated damages, (2) abuse of process and (3) attorneys' fees and costs. The basis for Flatiron's counterclaim for abuse of process is that Plaintiffs were never ready, willing and able to close on the Property and never obtained the financing they needed to purchase the Property; Plaintiffs' intent in filing the notice of pendency was to harass and injure Flatiron by encumbering the Property; and Plaintiffs frivolously maintained their specific performance claim for fifteen months knowing that they had failed to close in accordance with the terms of the Agreement and that they had never been ready, willing and able to close.

18. Although Debtor has not admitted in so many words that it filed a specific performance complaint knowing all the while that it had breached the Agreement by failing to close in accordance with its clear terms, a number of statements developed in the course of litigation in the state court demonstrate that such was its intent. *See* Nov. 21, 2005 e-mail from Nick Donovan to downtownrealty@msn.com, a copy of which is annexed hereto as Exhibit J ("We need to develop a strong litigation strategy, which is probably different depending upon what we hear from GCP [lenders]."); Dec. 4, 2007 deposition of Howard Levi at pp. 143-44, a relevant excerpt of which is annexed hereto as Exhibit K (Mr. Levi: "No, I think that the main thing on the thing it was to get my money back . . . . I guess [my lawyer] felt like he protect me the way he's writing [the complaint seeking specific performance] . . . ."). Again, it was Debtor who requested an adjournment of the scheduled time-of-the-essence closing of September 21, 2005 (and

5

agreed to pay for that privilege), failed to appear at the time-of-the-essence closing of October 7, 2005, and failed to propose a closing date in November 2006 after Flatiron gave Debtor one last opportunity to close on the Property. The evidence laid out above is a clear indication of Plaintiffs' improper use of the notice of pendency.

19. This case has been litigated extensively in state court. Discovery is complete, further discovery has been waived by Plaintiffs, and at a hearing on January 21, 2010, Supreme Court Justice Marcy Friedman directed Plaintiffs to file a note of issue no later than February 22, 2010.

20. On February 22, 2010, Plaintiffs filed a note of issue. The case is now ready for trial and has been placed on the trial calendar.

## RELIEF REQUESTED

21. Although Debtor has indicated in its petition, and again at the initial status conference before this Court held on January 28, 2010, that it might seek to litigate in this Court the issues raised in the State Court Action, the act of filing a note of issue demonstrates that Debtor is content to continue the prosecution of the State Court Action. Inasmuch as the automatic stay does not operate to impede Debtor's prosecution of this action, Flatiron now wishes to continue to pursue its counterclaims against Debtor in the State Court Action.

## BASIS FOR RELIEF REQUESTED

22. Under section 362(d)(1) of the Bankruptcy Code, the Court may grant relief from the automatic stay of a judicial proceeding "for cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code and must be determined on a case-by-case basis. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir.

1991) (citing *In re Tuscom Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990)). The Second Circuit Court of Appeals has pronounced the definitive enumeration of the factors which a court should consider when deciding whether to grant relief from the stay under Section 362(d)(1). *In Re Sonnax*, 907 F.2d 1280, 1286 (2nd Cir. 1990).

23. In determining whether to lift an automatic stay for cause, the court is typically guided by the following factors ("the *Sonnax* factors"):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the Debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the Debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the Debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and balance of harms.

*In Re Sonnax*, 907 F.2d at 1286 (quoting *In re Curtis*, 40 B.R. 795, 799-800 (D. Utah 1984)); *In Re New York Med. Group, P.C.*, 265 B.R. 408 (S.D.N.Y. 2001); *see also In re Fernstrom Storage & Van Co.*, 938 F.2d at 735; *In re Tuscon Estates*, 912 F.2d at 1166; *In re Pro Football Weekly, Inc.*, 60 B.R. 824 (N.D. Ill. 1986); *In re Salisbury*, 123 B.R. 913, 915 (S.D. Ala. 1990); *In re Peterson*, 116 B.R. 247, 249 (D. Colo. 1990); *In re Bach Laundry Mach. Co.*, 37 B.R. 564, 566 (N.D. Ohio 1984) (listing factors to consider in determining if cause exists: (1) likelihood, if any, that the debtor will suffer great prejudice if the stay is lifted; (2) whether the hardship the moving parties may suffer if the stay remains in effect will outweigh any prejudicial effect to the debtor or the estate if

relief from the stay is granted; and (3) the likelihood that the creditor will prevail on the claim pending in the state court).

24. Further, the legislative history states that cause may be established by a single factor such as "lack of any connection with or interference with the pending bankruptcy case." H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 343-44 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News, 5787, 6300.

25. However, not all of these factors will be relevant in every case, nor does a court need to assign equal weight to each factor. *In re Mazzeo*, 167 F.3d 139, 143 (2nd Cir. 1999); *In re New York Med. Group*, 265 B.R. at 408.

26. In the case of *In re G.S. Distributors, Inc.* 331 B.R. 552 (Bankr. S.D.N.Y. 2005), the court granted relief from the automatic stay where the debtor and the movant had been litigating claims and counterclaims prior to the filing and the action had advanced to the point where the movant was preparing to file a motion for summary judgment. Judge Gropper, analyzing the *Sonnax* factors, determined that all of the applicable factors favored granting relief from the stay. Virtually the same factors that were present in *G.S. Distributors* are applicable here.

27. There, as here, granting relief from the stay would result in a complete resolution of all issues between the parties (factor 1), and indeed would permit the set-off of obligations once both parties' claims have been adjudicated; it would not interfere with the bankruptcy case since the relief would be limited to resolving the disputed claims between the parties (factor 2); the state court has the necessary expertise to adjudicate the action and is fully familiar with this action, having handled it for almost five years (factor 4); permitting the litigation in state court would not prejudice other creditors (factor 7);

8

lifting the stay would promote judicial economy since the State Court Action is ready for trial (factors 10 and 11); and Debtor would not incur any harm since the case will proceed in the forum of its own choosing (factor 12).

28. Legal authority having been discussed in the motion, the requirement of Local Bankruptcy Rule 9013-1 that a memorandum of law be filed with all motions is deemed satisfied pursuant to paragraph 28 of this Court's case management order.

## CERTIFICATION

29. On March 24, 2010, the undersigned spoke with Noson Kopel, Esq., bankruptcy counsel for the Debtor at Debtor's 341 meeting, and requested that Debtor consent to the relief sought herein. Mr. Kopel indicated that he would refer the question to Edward Gewirtz, lead counsel for Debtor. By e-mail that afternoon, Mr. Gewirtz refused to consent to this relief. A copy of this e-mail is annexed hereto as Exhibit L.

# CONCLUSION

For the reasons set forth above, Flatiron respectfully requests that the Court grant the relief requested.

Dated: New York, New York
March 29, 2010

                                        CARTER LEDYARD & MILBURN LLP

                                        By: _____
                                               Aaron R. Cahn
                                               Alan S. Lewis

                                        Carter Ledyard & Milburn LLP
                                        2 Wall Street
                                        New York, New York 10005
                                        Telephone: (212) 732-3200
                                        Facsimile: (212) 732-3232
                                        *Attorneys for Flatiron 21 Associates LLC*

To:    Noson Kopel, Esq.
        Edward Gewirtz, Esq.
        Bronstein Gewirtz & Grossman LLC
        60 East 42nd Street, Suite 4600
        New York, New York 10165
        Telephone: (212) 697-6484
        Facsimile: (212) 697-7296
        *Attorneys for Downtown Realty Operating Corporation*

        Office of the United States Trustee
        33 Whitehall Street, 21st Floor,
        New York, New York 10004